IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IAN HUMPHREY,

        Plaintiff,

 v.

TRANS UNION LLC, NAVIENT SOLUTIONS, LLC,
EQUIFAX INFORMATION SERVICES LLC, and
EXPERIAN INFORMATION SOLUTIONS INC.,[1]

        Defendants.

OPINION & ORDER

16-cv-370-jdp

---

  Plaintiff Ian Humphrey brings claims against several consumer reporting agencies—Trans Union, LLC, Equifax Information Services LLC, and Experian Information Solutions Inc.—and his former loan servicer, Navient Solutions, LLC, for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Humphrey alleges that Navient misreported to the consumer reporting agencies that he had failed to make required payments on his student loan accounts. As a result, the consumer reporting agencies reported inaccurate information about Humphrey.

  Now Trans Union has moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 36. The court has already granted Experian's motion to adopt and join Trans Union's motion, Dkt. 38 and Dkt. 39, and the court will grant Experian's motion to adopt and join Trans Union's reply brief, Dkt. 43, and Equifax's motion to adopt and join Trans Union's motion, Dkt. 50. Thus, the motion is brought, in effect, on behalf of all three consumer reporting agency defendants.

---

[1] The court acknowledges Navient's name change, Dkt. 48, and has amended the caption accordingly.

Humphrey's real issue is with Navient; he does not have any actionable claims against the consumer reporting agencies, so the court will grant their motion for judgment on the pleadings. The court will for the most part deny the various motions that Humphrey has filed since the parties completed briefing on the Rule 12(c) motion.

ALLEGATIONS OF FACT

The court draws the following facts from Humphrey's second amended complaint, Dkt. 29, accepting them as true for purposes of the motion for judgment on the pleadings. *Finch v. Peterson*, 622 F.3d 725, 728 (7th Cir. 2010).

Humphrey had student loans; Navient serviced the loans. In August 2011, Navient sent Humphrey an "expired" Total Permanent Disability Discharge application form, presumably because Humphrey intended to apply for the discharge and requested the necessary forms. It is unclear what "expired" means in this context; the court infers that the application form was somehow defective. And so Navient denied Humphrey's application on October 23, 2011, for that reason. Around eight or nine months later, Humphrey called Navient and complained that it had sent him an expired application form. Apparently this phone call accomplished little, because Navient sent Humphrey a second expired application form. Humphrey called Navient a second time, and Navient assured Humphrey that it would accept his application. But Navient denied Humphrey's second application on November 26, 2012. A year or so later, Humphrey and Navient engaged in some type of alternative dispute resolution, via the Department of Education Ombudsman Group. On June 5, 2014, the Department of Education approved Humphrey's Total Permanent Disability Discharge

application, "for identical reasons, and on [the] same physicians' credentials, [as] were previously denied." Dkt. 29, ¶ 19.

Since then, Navient has reported and continues to report to consumer reporting agencies that Humphrey did not make required payments from September through December 2012 and July through December 2013. Humphrey alleges that, "[o]n information and belief, the Derogatory Information was false, as Humphrey was not required to make payments to Navient during the 120-day period after he notified them of his intent to file a discharge application nor during Navient's review period." *Id.* ¶ 21. Humphrey disputed the reports of non-payment with Navient; Navient stood by the information it reported. Humphrey also disputed the reports with the consumer reporting agencies—Trans Union, Equifax, and Experian (CRAs)—and the agencies reported the disputes to Navient. Navient responded by validating all loan items. The CRAs continued to report the "derogatory information."

Humphrey requested that the CRAs "reinvestigate" the non-payment issue and asked for information regarding how each verified the information. Humphrey summarily alleges that, "[o]n information and belief, [the CRAs] did not conduct a reasonable investigation into the accuracy of [their] reporting of Humphrey's accounts with Navient." *Id.* ¶¶ 30, 32, 34. Humphrey continued to dispute the non-payment issue with defendants in 2015.

Humphrey brings claims against the CRAs for willful and negligent violations of the FCRA for "failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports," failing to comply with the FCRA's reinvestigation requirements, and failing to give Humphrey his credit file. *Id.* ¶¶ 71, 79. Humphrey brings claims against Navient for failing to investigate the information it reported, failing to review

all information it received from the CRAs, failing to report the results of its investigation to the CRAs, failing to report that the information is supplied was inaccurate, and failing to modify, delete, or permanently block the inaccurate information.

The court has subject matter jurisdiction over Humphrey's claims pursuant to 28 U.S.C. § 1331, because they arise under federal law.

ANALYSIS

**A. Motion for judgment on the pleadings**

The CRAs have moved for judgment on the pleadings as to all of Humphrey's claims against them. The court will grant judgment on the pleadings "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). The court reviews motions for judgment on the pleadings under the same standard as motions to dismiss for failure to state a claim upon which relief can be granted, although under Rule 12(c) the court considers all pleadings, not just the complaint. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). "The essence of the motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of her facts are accurate, she has no legal claim." *Brown v. Pick 'N Save Food Stores*, 138 F. Supp. 2d 1133, 1136-37 (E.D. Wis. 2001) (citing *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999)).

Before we turn to the merits, Humphrey requests oral argument on the pending 12(c) issues. Humphrey contends that oral argument is necessary "for the Court to determine whether Humphrey's allegations deal with factual inaccuracies in Trans Union's and

Experian's reporting." Dkt. 44, at 1. But as explained, Rule 12(c) considers the legal sufficiency of Humphrey's claims as plead. The parties had the opportunity to fully brief the salient issues, and the court will not entertain oral argument simply to allow Humphrey a second opportunity to make his case. Humphrey has not explained why oral argument is necessary; he reiterates his Rule 12(c) arguments and states that "Trans Unions and Experian should not be permitted the chance to win dismissal without defending their errant position in oral arguments." *Id.* at 3. But the court is satisfied that it is able to fully and fairly resolve the motion on the parties' written submissions, and the court will deny Humphrey's motion.

The court must determine whether Humphrey has identified any actionable claims against the CRAs. Humphrey alleges that the CRAs violated two FCRA provisions: § 1681e(b) for failure to "follow reasonable procedures to assure maximum possible accuracy," and § 1681i for failure to comply with reinvestigation requirements.[2] To state a claim under either section, Humphrey must allege that the CRAs prepared reports containing inaccurate information. *See Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004) ("In the absence of evidence that Experian disclosed incorrect information . . . Wantz cannot even show that it violated the Act's reinvestigation requirement [i.e., § 1681i]."), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (as to § 1681e(b)); *see also Omar v. Experian Info. Sols., Inc.*,

---

[2] Humphrey alleges that the CRAs also violated § 1681g when they failed to provide him his credit file. But, as Trans Union points out, Humphrey does not allege that he *requested* his credit file, so these claims necessarily fail. *See* § 1681g(a)(1) ("Every consumer reporting agency shall, *upon request*, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." (emphasis added)).

Humphrey does not mention or defend his § 1681g claims in his briefing, so, presumably, he has decided to drop them.

No. 10-cv-1047, 2012 WL 2930778, at *4 (S.D. Ind. July 18, 2012) ("It is seemingly self-evident that a plaintiff cannot have a viable claim under the FCRA unless his credit report is somehow inaccurate.").

And the purportedly inaccurate information must be actually, factually inaccurate. *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 66-67 (1st Cir. 2008) (collecting cases and stating, "It is thus clear that to prevail on a § 1681e(b) claim, a plaintiff must demonstrate that his or her credit report sports an *actual* inaccuracy. . . . [And] the weight of authority . . . indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must [also] fail."). Here, at first blush, it appears that the CRAs reported factually accurate information: they reported Humphrey's delinquencies as Navient reported them, and Navient verified the accuracy of its information after Humphrey pressed the issue. Humphrey disputes the "accuracy" of the information because he does not believe that he missed required payments.

The *DeAndrade* line of cases confirms that this type of "inaccuracy" is not actionable against reporting agencies. A credit report contains factual inaccuracies if the reporting agency could have uncovered the purported inaccuracy had they reasonably reinvestigated. *Id.* at 68; *see also Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (A § 1681i(a) "claim is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry."). Reporting agencies are not courts: they are not required to investigate and adjudicate legal disputes regarding the validity of underlying debts. *Brill v. Trans Union LLC*, No. 15-cv-300, 2015 WL 9095103, at *4 (W.D. Wis. Dec. 16, 2015) ("[C]redit reporting agencies are not tribunals. They simply collect and

report information furnished by others." (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010))), *aff'd sub nom. Brill v. TransUnion LLC*, 838 F.3d 919 (7th Cir. 2016). When a consumer claims that he is not legally obligated to pay a reported debt, he typically has a claim against the *creditor*, not the reporting agencies. The creditor is the proper target, as it "is in a much better position to determine the authenticity of its own records." *Id.* at *3 (collecting cases).

Here, Humphrey does not allege that there were additional facts that the CRAs could have uncovered that would have prompted them to correct the purported inaccuracy. In fact, Humphrey does not identify *anything* specific that the CRAs could have or should have done differently. Well, he does argue that they should have read, analyzed, and applied applicable federal regulations and concluded that Humphrey was not *legally* obligated to make payments during the time periods at issue. But, as discussed, they were not required to do what amounts to an adjudication of his complaint against Navient.

Humphrey's story is relatively straightforward: he did not make a number of loan payments to Navient, ostensibly because he did not have to; Navient reported that the accounts were delinquent and confirmed as much to the CRAs; and Humphrey suffered for it. Humphrey's fight is with Navient, not the CRAs. Where the validity of the reported information turns on questions of law, there is no *factual* inaccuracy, and the consumer has no actionable FCRA claims against the reporting agencies. Thus, the court will grant the CRAs' motion for judgment on the pleadings and dismiss Humphrey's claims against them.

## B. Remaining motions

### 1. Motion to stay

First, the court will deny Humphrey's motion to stay. Dkt. 51. Humphrey requests that the court stay its decision on the Rule 12(c) motion to allow him the opportunity to amend his complaint. But Humphrey's proposed third amended complaint—containing several new factual allegations in support of his claims against the CRAs—does not change the foregoing analysis or save his claims against the CRAs.[3] So there is no reason to allow those amendments or stay the decision on the CRAs' motion.

### 2. Motion to modify schedule

Second, the court will for the most part deny Humphrey's motion to modify the schedule. Dkt. 53. Humphrey asks for a brand new schedule. He states that discovery has been "on hold" pending resolution of the Rule 12(c) motion. But that was a choice the parties made; the court did not stay discovery. In fact, the court was under the impression that the parties *were* conducting discovery. Similarly, Humphrey complains that Navient has been unwilling to produce discovery without a protective order in place. But fact that the

---

[3] Humphrey attempts to beef up his allegations that he was not required to make payments "from the time he filed an application for total permanent disability discharge until the time the loan servicer (or lender) approved or denied that application." Dkt. 61, ¶ 20; *see also id.* ¶ 21 ("Humphrey was not required to make payments to Navient for some or all of the months of September-December 2012, and therefore was not delinquent when he did not make them."); *id.* ¶¶ 22-23 ("From July 2013 onward, a student loan borrower such as Humphrey was not required to make payments to the loan servicer (or lender) for a period of 120 days from the time he provided the loan servicer (or lender) a notice of his intent to file an application for total permanent disability discharge. Humphrey was not required to make payments to Navient for some or all of the months of July-December 2013, and therefore was not delinquent when he did not make them."). Humphrey alleges that his claims against the CRAs "stem from the errant reporting of delinquencies on his Navient accounts as conduct prohibited by the FCRA, and are not based at all on any legal dispute between him and Navient." *Id.* ¶ 73. But his allegation that it is not a legal dispute does not make it so.

parties did not move for a protective order until five months after discovery began was a problem of their own making. Now Humphrey complains that his expert disclosure deadline is fast approaching (it has actually passed, at this point) and that he has been unable to retain experts without discovery. Maybe Humphrey is correct, that he "has been stymied from obtaining important documents, answers, and admissions." Dkt. 63, at 3. But Humphrey is to blame for his current situation: he *agreed* to stay discovery, he did not pursue a protective order sooner, and he did not move to compel production (assuming defendants were as uncooperative as Humphrey describes). This indicates that Humphrey at least passively—if not actively—agreed to stall discovery. Humphrey has not been "unable" to conduct discovery.

Humphrey is right about one thing: he *is* in a bind. But it is a bind of his own making. This district does not offer extensions or completely reset schedules cavalierly. But the court is not totally unsympathetic to the reality of the situation. The court will reset the expert disclosure deadlines, as Humphrey's has passed. The proponents' expert disclosure deadline is reset to May 1, 2017. Respondents' is reset to June 1, 2017. And, as a result, the dispositive motion deadline is reset to June 15, 2017. The court will not move any other deadlines.

### 3. Motions for leave to amend

And finally, the court will deny Humphrey's motions for leave to amend his complaint. Dkt. 52 and Dkt. 62.[4] Humphrey has filed a proposed third amended complaint. Dkt. 61. In addition to new factual allegations, Humphrey incorporates four new claims

---

[4] The court will grant Equifax's motion to adopt and join Trans Union's response to Humphrey's motion for leave to amend. Dkt. 67.

against Navient: violation of "Regulation V" (12 C.F.R. § 1022), negligence, breach of the covenant of good faith and fair dealing, and unjust enrichment.

The court will freely grant leave to amend when justice so requires, but the court need not allow leave to amend when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001). Humphrey's new claims against Navient are late and futile. Humphrey offers no explanation for why he could not have pleaded the new claims against Navient from the beginning. In fact, according to Humphrey, he has not had the opportunity to conduct any discovery, so he did not learn any new information that could have given rise to new claims along the way. Regardless, the claims are futile and, as drafted, would not withstand a motion to dismiss for failure to state a claim upon which relief can be granted.

First, Humphrey alleges that Navient failed to "establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information" it reported, in violation of 12 C.F.R. § 1022.42(a), and failed to "conduct a reasonable investigation of [Humphrey's] direct dispute[s]," in violation of 12 C.F.R. § 1022.43. But, as Navient points out, it is not clear that the C.F.R.s create a private right of action for a furnisher's failure to comply with the regulation, separate from the FCRA. 15 U.S.C § 1681s-2 recognizes that there is a private right of action for claims regarding willful or negligent violations of the FCRA by furnishers—not violations of the regulations. *See* 15 U.S.C. § 1681s-2(c), (d) (permitting private enforcement of § 1681s-2(b) pursuant to § 1681n and § 1681o). Humphrey is already bringing such claims against Navient. Humphrey has not demonstrated how this claim under the regulation is actionable.

Second, Humphrey alleges that Navient was negligent when it gave him expired discharge applications. But Humphrey does not flesh out a viable negligence theory. He does not allege that Navient owed Humphrey a duty; he summarily alleges that Navient "failed to exercise ordinary care." Dkt. 61, ¶ 105. To state a common-law negligence claim, Humphrey must establish the existence of a duty of care, that Navient breached that duty, a causal connection between the breach and Humphrey's alleged injury, and actual loss or damage. *Nichols v. Progressive N. Ins. Co.*, 2008 WI 20, ¶ 11, 308 Wis. 2d 17, 746 N.W.2d 220. Humphrey's claim, as pleaded, would not survive a motion to dismiss for failure to state a claim upon which relief can be granted.

Third, Humphrey alleges that Navient violated its duty of good faith and fair dealing when it gave him expired discharge applications. Under Wisconsin law, every contract contains an implied duty of good faith in its performance and enforcement. Wis. Stat. § 401.304; *see also Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 541 N.W.2d 203, 213 (Ct. App. 1995). A breach of the implied duty of good faith is a breach of the contract. *Foseid*, 541 N.W.2d at 212. Generally, "[t]he implied covenant of good faith prevents parties to a contract from 'intentionally and purposely do[ing] anything to prevent the other party from carrying out his or her part of the agreement.'" *Non Typical Inc. v. Transglobal Logistics Grp. Inc.*, No. 10-cv-1058, 2011 WL 1792927, at *6 (E.D. Wis. May 11, 2011) (quoting *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶ 41, 301 Wis. 2d 752, 734 N.W.2d 169). So "to state a claim for breach of duty of good faith, a plaintiff must allege facts 'that can support a conclusion that the party accused of bad faith has actually denied the benefit of the bargain originally intended by the parties.'" *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 803 (W.D. Wis. 2006) (quoting *Zenith Ins. Co. v. Emp'rs Ins.*, 141 F.3d 300,

308 (7th Cir. 1998)). Humphrey has not stated a claim for breach of the duty of good faith and fair dealing because he has not pleaded the existence of a contract between Navient and Humphrey or a breach of that contract.

Finally, Humphrey alleges that "[a]ll payments made by Humphrey to Navient following its first rejection of his application for total permanent disability discharge are conferred upon Navient by Humphrey," creating unjust enrichment. Dkt. 61, ¶ 115. It appears that Humphrey is alleging that all payments made after Navient rejected his discharge application qualify as unjust enrichment because Navient should have discharged the loan (the only reason it did not discharge the loan was because Humphrey submitted an expired application form, which he received from Navient). "To prevail on an unjust-enrichment claim, a plaintiff must prove three elements: '(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.'" *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (quoting *Seegers v. Sprague*, 70 Wis. 2d 997, 236 N.W.2d 227, 230 (1975)). Unjust enrichment is a quasi-contractual "legal cause of action governed by equitable principles." *Id.* at 476-77. It is possible that Humphrey *may* have an unjust enrichment claim against Navient, if he is able to prove that they should not have kept payments made after Navient should have granted the discharge. But Humphrey's allegations are insufficiently developed, generalized, and do not actually state that Humphrey made such payments to Navient. Humphrey's claim, as drafted, is conclusory and fails to state a claim.

The court will deny Humphrey leave to amend his second amended complaint because he has not explained why the proposed amendments are timely and viable.

ORDER

IT IS ORDERED that:

1. Defendant Experian Information Solutions Inc.'s motion to adopt and join, Dkt. 43, is GRANTED.

2. Defendant Equifax Information Services LLC's motions to adopt and join, Dkt. 50 and Dkt. 67, are GRANTED.

3. Plaintiff Ian Humphrey's motion for oral argument, Dkt. 44, is DENIED.

4. Defendant Trans Union, LLC's motion for judgment on the pleadings, Dkt. 36, is GRANTED. Plaintiff's claims against defendants Trans Union, Equifax, and Experian are dismissed.

5. Plaintiff's motion to stay, Dkt. 51, is DENIED.

6. Plaintiff's motion to modify the schedule, Dkt. 53, is GRANTED in part and DENIED in part. The proponents' expert disclosure deadline is reset to May 1, 2017. Respondents' is reset to June 1, 2017. And, as a result, the dispositive motion deadline is reset to June 15, 2017. All other deadlines remain in place.

7. Plaintiff's motion for leave to amend, Dkt. 52, is DENIED as moot, and his amended motion for leave to amend, Dkt. 62, is DENIED.

Entered April 17, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge