IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IAN HUMPHREY,

                Plaintiff,

v.

NAVIENT SOLUTIONS, INC.,

                Defendant.

OPINION & ORDER

16-cv-370-jdp

---

Defendant Navient Solutions, Inc., serviced plaintiff Ian Humphrey's student loans from 2010 to 2014, when Humphrey received a discharge for being disabled. Humphrey is suing Navient under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2, on the ground that Navient failed to conduct a reasonable investigation after receiving notice of multiple disputes that it was furnishing inaccurate information about Humphrey's loans to credit reporting agencies.

Two motions are now before the court: (1) Navient's motion for summary judgment, Dkt. 79; and (2) Navient's motion to strike the affidavit of Sam Wayne, Dkt. 123. The court will grant the first motion and deny the second. Navient is entitled to summary judgment because Humphrey has not shown that he suffered any harm as a result of Navient's alleged failure to conduct a reasonable investigation, which means that Humphrey lacks standing to sue. Because the court does not need to consider the Wayne affidavit in resolving the summary judgment motion, it is not necessary to decide whether the affidavit is admissible.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

In November 2010, Navient began servicing seven of Humphrey's student loans. Humphrey never made any payments to Navient.

According to Humphrey, in October 2011, he sent Navient an application for a "Total and Permanent Disability Discharge." Navient says that it has no record of receiving that application.

On March 12, 2012, Humphrey asked Navient to send him an application for a "Total and Permanent Disability Discharge." Navient sent Humphrey an application form the same day.

From September 2012 to December 2012, Navient furnished information to consumer reporting agencies that Humphrey's accounts were past due. Navient continues to furnish information that Humphrey's accounts were past due during that time.

On November 26, 2012, Humphrey returned a completed application for a disability discharge, but it was not the same form that Navient sent him. Because it was an expired version of the form that the U.S. Department of Education no longer accepted, Navient notified Humphrey on December 7, 2012, that it could not process his application and it sent Humphrey a new form.

From July 2013 to December 2013, Navient furnished information to consumer reporting agencies that Humphrey's accounts were past due. Navient continues to furnish information that Humphrey's accounts were past due during that time.

On October 14, 2013, Humphrey called Navient. After Humphrey stated that he "had been considered permanently disabled in the past," Dkt. 82, ¶ 15, Navient informed Humphrey how to apply for a disability discharge.

On December 6, 2013, Navient received from Humphrey a completed form called "Loan Discharge Application: False Certification (Disqualifying Status)." Navient did not respond to this request. However, after December 2013, Navient stopped reporting that Humphrey had a past due amount or otherwise owed any money.

On February 6, 2014, Nelnet (the Department of Education's servicer for disability discharges) informed Navient that it had received an application for a disability discharge from Humphrey. In July 2014, Humphrey's student loans were discharged.

Twice in July 2014 and once each in August 2014, November 2014, April 2015, and September 2015, Navient received a so-called "Automated Consumer Dispute Verification" about Humphrey's student loans from a consumer reporting agency such as Equifax or Trans Union. The parties do not explain exactly what an "Automated Consumer Dispute Verification" is, but the court's understanding from context and other cases is that it is both a notice from a consumer reporting agency that there is a dispute about the accuracy of information in a credit report and a request for the creditor to verify that information. For simplicity, the court will refer to an Automated Consumer Dispute Verification as a verification request.

Each verification request included one or more of the following "dispute codes": "Not liable for account (i.e., ex-spouse, business). If liable, provide or confirm ID and ECOA Code"; "Consumer states inaccurate information. Provide or confirm ID and account information"; "Not his/hers. Provide or confirm complete ID"; "Claims true identity fraud, account

fraudulently opened. Provide or confirm complete ID"; and "Claims company will delete. Verify all account information." Both July 2014 requests included a remark that Humphrey's loan was "[d]ischarged via TPD through NELNET." The November 2014 verification request included a document in which Humphrey alleged that an admissions counselor "set up these loans without power of attorney using my info" and that "[t]hey have no proof I signed for these loans." The April 2015 request included an allegation from Humphrey that a "school falsely certified me for a . . . Federal Loan that I was not eligible for. I did not authorize these items."

In response to each of these requests, Navient reviewed its "internal records" related to Humphrey's "personal identification information, promissory notes, and loan documentation" and determined that Humphrey incurred the loans and that the information was accurate. *E.g.*, Dkt. 82, ¶ 57. Each time, Navient reported back to the consumer reporting agency that the information it furnished was correct, with a few exceptions that are not relevant to the case.

Humphrey sent letters dated June 18, 2014, July 30, 2014, and September 16, 2015, in which he complained about his student loans. The 2014 letters are addressed to "Sallie Mae" rather than Navient, but Humphrey says that he sent all of the letters to Navient.

In the June 2014 letter, Humphrey wrote that his credit report showed "late payment periods" even though there were "no late payments." Humphrey cited several reasons to support his view, including that there were "circumstances where the items did not require payment due to their status in a government evaluation process such as . . . Total Permanent Disability Discharge." Dkt. 102-4. Humphrey also alleged fraud.

In the July 2014 letter, Humphrey complained that "[y]our company is reporting a nonpayment period." Among other things, Humphrey wrote that he "already agreed to the TPD discharge."

In the September 2015 letter, Humphrey complained that Navient "reported a period of nonpayment for 2013" even though "[y]ou have no valid loan servicer agreement with me."

Humphrey says that he has been denied credit several times because Navient reported his accounts as past due and that the denials of credit have prevented him from treating a painful wisdom tooth and finding suitable housing. He also says that he "has suffered emotional distress as a result of [Navient's] furnishing errant information to the [c]onsumer [r]eporting [a]gencies." Dkt. 121, ¶ 148.

ANALYSIS

A. **Legal standard**

Humphrey's claim against Navient arises under 15 U.S.C. § 1681s-2(b), which requires a "furnisher" of credit information to take various actions when it receives notice from a "consumer reporting agency" of a dispute about the accuracy of information that the furnisher provided.[1] At issue in this case is the requirement on the furnisher to "conduct an investigation" about the dispute. 15 U.S.C. § 1681s-2(b)(1)(A). Although the language of the statute does not expressly require it, courts have consistently concluded that § 1681s-2(b) should be read as requiring a "reasonable" investigation. *E.g.*, *Chiang v. Verizon New England Inc.*, 595 F.3d 26,

---

[1] Section 1681s-2(a)(8) allows a consumer to file a dispute with the furnisher directly, but the consumer has no private right of action if the furnisher fails to take action in that situation. 15 U.S.C. § 1681s-2(c)(1).

36–37 (1st Cir. 2010); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004); *Scheel-Baggs v. Bank of Am.*, 575 F. Supp. 2d 1031, 1039 (W.D. Wis. 2008) (Crabb, J.). *See also Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (assuming without discussion that § 1681s–2 requires "reasonable" investigation). The parties here agree that a reasonable investigation is required, Dkt. 80, at 6; Dkt. 95, at 8-9.

Navient does not deny that it is a furnisher of credit information or that it received notice of disputes about Humphrey's loans from consumer reporting agencies on multiple occasions. Humphrey does not deny that Navient conducted an investigation each time it received notice of a dispute. Humphrey's claim is that Navient's investigations were not reasonable because Navient failed to review his disability discharge applications and the various letters he sent to Navient, and more generally because Navient does not have adequate policies for determining how to conduct a reasonable investigation.

**B. Is Humphrey required to prove that Navient furnished inaccurate information?**

The parties debate a threshold question, which is whether Navient furnished any inaccurate information that it needed to correct. The parties do not explain the purpose of the debate, which is not immediately obvious. After all, Humphrey's claim is not that Navient reported inaccurate information; the statute does not provide a private right of action for that type of violation. 15 U.S.C. § 1681s-2(c)(1); *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011). And § 1681s-2(b) does not make a furnisher's duty to investigate contingent on whether the information it provided is accurate.

Nevertheless, a number of courts have held that a prerequisite to a claim under § 1681s-2(b) is a showing that the defendant provided false, misleading, or incomplete information. *Chiang*, 595 F.3d at 37-38; *Jugoz v. Experian Info. Sols., Inc.*, No. 16-cv-05687, 2017

WL 2720184, at *3 (N.D. Cal. June 23, 2017); *Banks v. Corp.*, No. 12-cv-731, 2013 WL 12233929, at *3 (W.D. Wis. May 21, 2013) (Crabb, J.). *See also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (imposing same requirement on claim under similarly worded § 1681i); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (imposing same requirement on claim under similarly worded § 1681e(b)). These courts say that proof of inaccurate information is required because the purpose of the FCRA is "to protect consumers against the compilation and dissemination of inaccurate credit information." *Chian*, 595 F.3d at 38.

The parties do not cite any of these cases in their briefs, but both sides seem to assume that Humphrey cannot prevail on his claim unless he shows that Navient furnished inaccurate information. The court agrees with that assumption, but it is not necessary to decide whether proof of inaccurate information is an element in every claim under § 1681s-2(b). It is a requirement in this case because Humphrey alleges that all the types of harm he suffered (emotional distress, denial of credit, and other damages flowing from the denial of credit) were caused by inaccurate information in his credit report. In the absence of harm that can be traced to a failure to conduct a better investigation, Humphrey cannot maintain his claim under § 1681s-2(b).

Simply as a matter of statutory interpretation, 15 U.S.C. § 1681o authorizes an award of "actual damages sustained by the consumer as a result of" a negligent failure to comply with the FCRA. A plaintiff cannot show "actual damages" if he was not harmed by a failure to conduct a reasonable investigation.

Section 1681n does not require a showing of actual damages to obtain punitive damages for willful violations of the FCRA. But regardless of the scope of the statute, a plaintiff must

7

show *some* harm that is "fairly traceable" to the violation in order to have standing to sue under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). In *Spokeo*, the Court considered the requirements for standing under the FCRA and concluded that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation [that] result[s] in no harm." *Id.* at 1550. As an example, the Court noted a situation in which "a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information [but] that information [is] entirely accurate." *Id.*

Under the reasoning in *Spokeo*, Humphrey cannot maintain a claim that Navient failed to conduct a reasonable investigation under § 1681s-2(b) without a showing that a failure to conduct such an investigation harmed him. Because all of Humphrey's theories of harm are contingent on a showing that Navient furnished inaccurate information, the court must dismiss Humphrey's claim unless he makes that showing.

## C. Did Navient furnish inaccurate information?

### 1. Alleged inaccuracies

Both the verification requests from the consumer reporting agencies and the dispute letters from Humphrey suggest that Humphrey was disputing information about his student loans on various grounds, but his claim in this case is more limited. In particular, Humphrey alleges that Navient was and still is inaccurately reporting that his accounts were past due from September 2012 to December 2012 and again from July 2013 to December 2013.

Humphrey does not allege that he made any payments during those months; in fact, it is undisputed that he did not make any payments on his loans while Navient was servicing them. Rather, Humphrey's position is that he was not required to make payments, for two reasons. First, he cites 34 C.F.R. § 685.213 and § 682.402, which suspend collection activity

8

and payments while a borrower's application for total and permanent disability is pending. 35 C.F.R. §§ 685.213(b)(3)(i),(iii); 35 C.F.R. §§ 682.402(c)(2)(ii)(D) and 682.402(c)(2)(ix)(B). Humphrey says that he submitted disability applications in October 2011 and November 2012 and those applications were not denied on the merits, so no payments were due any time after October 2011.

Alternatively, Humphrey says that no payments were due from September 2013 to December 2013 because Navient failed to give him notice required by the "Master Promissory Note." Humphrey relies on the following language: "If I default on any loan(s) made under this MPN, the default will also be reported by the guarantor to all national consumer reporting agencies. Before any guarantor reports such a default, it will give me at least 30 days notice that default information will be disclosed to the consumer reporting agencies." Dkt. 82-1, at 7. The court will consider both alleged inaccuracies in turn.

### 2. Application for disability discharge

As to 34 C.F.R. § 685.213 and § 682.402, Navient acknowledges its obligations under the regulations and says that it complied with them. Its position is that it did not have a pending application for a disability discharge from Humphrey at the time that it was reporting Humphrey's loans as past due. Humphrey says that he submitted separate applications for a disability discharge in October 2011, November 2012, and February 2014. Because it is undisputed that Navient did not report Humphrey's loans as past due after February 2014, the court need not consider that application.[2]

---

[2] Navient stopped reporting Humphrey's loans as past due in December 2013. Navient does not say what prompted the change, but neither side suggests that the reason has any significance for this case, so the court does not consider it.

### a. Existence of the October 2011 application

There is little evidence to suggest that Humphrey actually submitted an application in October 2011. Navient denies that it received an application then; Humphrey cites no documentary evidence that such an application existed; he does not point to any references that he or Navient made to that application in any of the correspondence between the two; there is no record that Humphrey asked Navient for an application form before 2012; and he does not allege that he ever contacted Navient to inquire about the status of a 2011 application before he asked Navient for an application form in March 2012.

Humphrey cites two pieces of evidence: (1) his own affidavit; and (2) a phone call between him and a Navient representative in 2015. But neither piece of evidence is sufficient to raise a genuine issue of material fact.

In his affidavit, Humphrey says that he "submitted a completed [disability] application along with a certification of total and permanent disability by Dr. Charles Hodulik, MD, to [Navient] on October 23, 2011 using the form that [Navient] sent to me. [Navient] denied my application because it was submitted on an expired form." Dkt. 102, ¶ 3. This averment is dubious for three reasons.

First, as Navient points out, Humphrey's testimony in his affidavit is inconsistent with his deposition testimony, in which Humphrey said that he could not remember when in 2011 he allegedly sent his application. Dkt. 87 (Humphrey Dep. 60:21-23). Humphrey does not explain the discrepancy. *Abraham v. Washington Grp. Int'l, Inc.*, 766 F.3d 735, 741 (7th Cir. 2014) ("[A] deponent may not use an affidavit sworn to after a deposition to contradict deposition testimony without giving a credible explanation for the discrepancies."). Second, although Humphrey refers to three separate documents in his averment, he neither provides a

copy of any of those documents nor explains why he does not have them. Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless [the Federal Rules of Evidence] or a federal statute provides otherwise."). Third, on September 11, 2017, counsel for Humphrey filed a letter in which he withdrew Humphrey's allegation that Dr. Hodulik prepared a certification for Humphrey in 2011. Dkt. 136. Counsel does not explain why Humphrey initially made that allegation, but he says that he is withdrawing it in light of an affidavit he received from Hodulik in which Hodulik denies preparing a certification for Humphrey in 2011.

Even if the court were to accept the averment in the affidavit as true, it does not get Humphrey over the finish line. Proof that Humphrey mailed the application is not proof that Navient possessed the application at the relevant time and would have uncovered it as part of a reasonable investigation. As noted above, neither side has any record of the application now. Obviously, Navient could not find a document it did not have. And if Navient did not have any record of receiving the application, then Navient would not know that Humphrey's payments should have been suspended under 34 C.F.R. § 685.213 and § 682.402 and that it was erroneously reporting that Humphrey's payments were past due.

Humphrey suggests that Navient destroyed evidence of his 2011 application, which is where the 2015 telephone call comes in. He argues that during the call a representative for Navient "confirmed" that it received his October 2011 application, Dkt. 95 at 7, but the recording of that call shows that this is simply inaccurate. The representative initially made an equivocal statement that "this shows October 23 of 2011," without identifying what "this" was or what it "show[ed]." Dkt. 102, ex O (Telephone recording 9:21–9:24). However, she later stated, "[t]he application from the disability was November 26, 2012." *Id.* at 11:37–11:44.

Humphrey tries to use the fact that the representative placed him on hold "for over one minute" in between those two statements, calling the delay "mysterious[]." Dkt. 95, at 7. Humphrey does not elaborate on the import of the delay, but presumably he is implying that the delay is evidence that the representative intentionally changed her statement in an attempt to conceal knowledge that Humphrey had submitted a disability application in 2011. Why the representative would do that Humphrey does not say, but his theory is fanciful and unsupported. On a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party, but the court cannot draw unreasonable or unsupported inferences in favor of either party. *Dawson v. Brown*, 803 F.3d 829, 834 35 (7th Cir. 2015).

### b. Applications on expired forms

Even if the court were to assume that Humphrey submitted an application in 2011 and that Navient could have uncovered it by conducting a reasonable investigation, Humphrey's affidavit is self-defeating because he avers that he used an expired form for his 2011 application. Although he says that rejecting his application on that ground was "byzantine, unreasonable," Dkt. 95, at 9, he does not dispute Navient's proposed finding of fact that it rejected applications on expired forms because the Department of Education would not accept them. Dkt. 121, ¶ 14. Under the federal regulations that he cites, Humphrey was required to use a form "approved by the Secretary" of the Department of Education. 34 C.F.R. § 682.402(c)(2)(ii)(D)(iv) ("The borrower must submit to the Secretary an application for a total and permanent disability discharge on a form approved by the Secretary."); 34 C.F.R. § 685.213(b)(1) ("To qualify for a discharge of a Direct Loan based on a total and permanent disability, a borrower must submit a discharge application to the Secretary on a form approved

by the Secretary."). Thus, if Humphrey did not use a form accepted by the Department of Education, he did not comply with these regulations and he was not entitled to a suspension of his loan payments.

Humphrey seems to believe that any and all applications trigger a suspension that lasts until the application is rejected for a substantive reason, regardless of any procedural errors with the application. That position is inconsistent with the regulations cited above, which Humphrey simply ignores. His view would also be unworkable in practice. If that were the rule, it would mean that a borrower could obtain an indefinite stay on his payments by submitting an application that is procedurally deficient and then declining to submit a proper application, thus forever forestalling a substantive decision on his application.

The court rejects that view and concludes as a matter of law that Humphrey was not entitled to a suspension of his loan payments as a result of a 2011 disability application. Because Humphrey was not entitled to a suspension, Navient cannot be held liable, either for failing to reflect a suspension in the information it provided to reporting agencies or for failing to "correct" information that was accurate.

It is undisputed that Humphrey submitted a disability application in November 2012, but it is also undisputed that he used an expired form and that Navient declined to process the application on that ground.[3] Thus, Navient was not required to suspend Humphrey's payments for that application either.

---

[3] This raises yet another reason to doubt Humphrey's allegation that he submitted an application in October 2011. If Navient had rejected that application because Humphrey used an expired form, why would Humphrey make the same mistake twice, particularly when Humphrey admits that Navient had sent him the correct form earlier in 2012?

### 3. Promissory note

Humphrey's final attempt to show an inaccuracy in Navient's reporting relies on language in a promissory note that required Navient to give Humphrey 30 days' notice before a reporting a "default" to a consumer reporting agency. Dkt. 82-1, at 7. This argument fails because Humphrey does not allege that Navient ever reported a default and Humphrey points to no language in the promissory note that required Navient to give him notice simply for reporting a nonpayment.

### D. Conclusion

To sum up, to prevail on his claim under § 1681s-2(b) that Navient failed to conduct a reasonable investigation, Humphrey was required to show that any failure to conduct such an investigation harmed him in some way. All of Humphrey's allegations of harm rely on an assumption that Navient furnished inaccurate information about his loans, so he needed to show that the information was in fact inaccurate to show that Navient's alleged violation of the FCRA harmed him. Because Humphrey failed to make that showing, the court concludes that he does not have standing to sue and Navient is entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Defendant Navient Solutions, Inc.'s motion for summary judgment, Dkt. 79, is GRANTED on the ground that plaintiff Ian Humphrey lacks standing to sue.

2. Navient's motion to strike Sam Wayne's affidavit, Dkt. 123, is DENIED as unnecessary.

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered September 13, 2017.

> BY THE COURT:
> /s/
>
> _____
> JAMES D. PETERSON
> District Judge