IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IAN HUMPHREY,

                  Plaintiff,                         OPINION and ORDER

   v.

NAVIENT SOLUTIONS, INC.,                     16-cv-370-jdp

                  Defendant.

---

A jury awarded plaintiff Ian Humphrey $180,000 in compensatory damages and $120,000 in punitive damages on his claim that defendant Navient Solutions, Inc., (Humphrey's student loan servicer) violated Humphrey's rights under the Fair Credit Reporting Act (FCRA) by failing to reasonably investigate disputed information on his credit report. Two motions filed by Navient are now before the court: (1) a motion under Federal Rule of Civil Procedure 50(a) that Humphrey hasn't met the standard for obtaining punitive damages, Dkt. 195; and (2) a motion under Rule 59 to either reduce Humphrey's compensatory and punitive damages or grant a new trial, Dkt. 210.

The court will grant Navient's Rule 50 motion. It was reasonable for the jury to find that Navient should have done more to confirm the accuracy of disputed information on Humphrey's credit reports, but there is no basis for finding that Navient willfully violated the law, which is the relevant standard for awarding punitive damages under the FCRA.

The court will deny Navient's Rule 59 without prejudice. Because the court is granting Navient's Rule 50 motion, the Rule 59 motion is now moot as to punitive damages. And the Rule 59 motion is premature as to compensatory damages because the court hasn't entered judgment yet.

BACKGROUND

Navient serviced Humphrey's student loans from 2010 to 2014, when Humphrey received a discharge for being disabled. Humphrey's claim against Navient arises under 15 U.S.C. § 1681s-2(b)(1)(A), which requires a "furnisher" of credit information to conduct a reasonable investigation when it receives notice from a credit reporting agency of a dispute about the accuracy of information that the furnisher provided. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).[1] There is no dispute that Navient qualifies as a furnisher under the statute.

Humphrey's claim is that Navient violated § 1681s-2(b)(1)(A) by failing to reasonably investigate notices it received in 2014 and 2015 from credit reporting agencies such as TransUnion and Equifax that Humphrey was disputing the accuracy of his credit reports. Humphrey cited multiple reasons for challenging the accuracy of his credit reports, but the only one relevant to this case is that Humphrey had filed an application for a "Total and Permanent Disability Discharge" in November 2012, and under the version of 34 C.F.R. § 682.402(c)(7)(i) in effect in 2012, a lender must suspend collections while an application for a disability discharge is pending. As a result, Humphrey says that Navient was inaccurately reporting his accounts as "past due" due in December 2012 and from July 2013 to December 2013.[2]

---

[1] If a consumer believes that his credit report includes inaccurate information, he may notify the credit reporting agency of the dispute, and then the agency must notify the entity that provided the information about the dispute. *See* 15 U.S.C. § 1681i(a)(2)(A). A consumer may also file a dispute with the furnisher directly, 15 U.S.C. § 1681s-2(a)(8), but the consumer has no private right of action if the furnisher fails to take action in that situation. 15 U.S.C. § 1681s-2(c)(1).

[2] There is no dispute that Navient stopped reporting Humphrey's account as past due once his

This court granted summary judgment to Navient on two grounds: (1) Humphrey didn't comply with the requirements for submitting a disability application, so Navient wasn't required to suspend collections and the information it provided was accurate; and (2) Navient didn't have a duty to investigate the possibility whether Humphrey had a disability discharge application pending in 2012 or 2013 because the notices Navient received from the credit agencies didn't say anything about such an application. The Court of Appeals for the Seventh Circuit disagreed with both of these conclusions, holding that Humphrey had submitted a valid application in November 2012 and that a "reasonable jury could infer that Navient had sufficient notice of the nature of the dispute, or, alternatively, that any deficiency of information resulted from Navient's own failure to conduct a reasonable investigation." Dkt. 165-1, at 9.

At trial, the jury found that: (1) Navient failed to conduct a reasonable investigation on seven notices that it received from credit reporting agencies in 2014 and 2015; (2) Navient's conduct was a substantial factor in causing harm to Humphrey; (3) Humphrey is entitled to $180,000 in compensatory damages; (4) Navient's violation of Humphrey's rights was willful; and (5) Humphrey is entitled to $120,000 in punitive damages. Dkt. 204.

The court denied Navient's motion for a judgment as a matter of law under Federal Rule of Civil Procedure 50(a) as to liability and compensatory damages but reserved a ruling on Navient's contention that Humphrey failed to show that Navient willfully violated the FCRA. The court deferred entry of judgment to allow the parties to brief that question. Dkt. 205.

---

application for a disability discharge was granted in 2014.

ANALYSIS

Navient has raised three issues in its post-trial briefs: (1) its conduct was not willful as a matter of law, so Humphrey isn't entitled to punitive damages; (2) the jury's award of compensatory damages was excessive; and (3) the jury's award of punitive damages was excessive. Navient raises the first issue under Rule 50(a) and the second two issues under Rule 59(e). But Rule 59(e) applies to motions to alter or amend the *judgment*, which, as noted above, the court hasn't entered yet. And Navient states in its motion that it "does not waive its right to seek relief under Rule 59, after judgment is actually entered." Dkt. 211, at 2. There is no point in deciding two Rule 59 motions, so the court will deny the Rule 59 motion without prejudice to Navient refiling it after judgment is entered. The court will limit its analysis to the question whether Humphrey met the legal standard for obtaining punitive damages.

A plaintiff bringing a claim under the FCRA may not recover punitive damages unless he shows that the defendant "willfully fail[ed] to comply with" the FCRA. 15 U.S.C. § 1681n. The jury instructions described that standard as follows:

> You may assess punitive damages against Navient only if Humphrey has proved that Navient violated his rights willfully. A violation is willful if the defendant knowingly or recklessly violated the plaintiff's rights. In other words, Humphrey must show that Navient either knew of an unjustifiably high risk that a violation would occur or should have known of such a risk because it was obvious.

Dkt. 199, at 9. That instruction was adapted from *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), and neither side challenges it.

Before evaluating Humphrey's punitive damages claim under the above standard, the court notes an issue that the parties didn't address before trial, which is whether willfulness should be decided by the court or the jury. Although both sides assumed that willfulness is a

4

question of fact for the jury, in *Van Straaten v. Shell Oil Product Co. LLC*, the court stated that *Safeco* "treated willfulness as a question of law." 678 F.3d 486, 491 (7th Cir. 2012). And questions of law are reserved for the court. *See Gramercy Mills, Inc. v. Wolens,* 63 F.3d 569, 571 (7th Cir. 1995) ("Judges, not juries, decide questions of law."). This conclusion is supported by the language of the FCRA itself, which states that a defendant who violates the statute willfully may be required to pay "such amount of punitive damages as the *court* may allow." 15 U.S.C. § 1681n(a)(1)(B)(2) (emphasis added). But regardless whether willfulness is a question of law or a question of fact, the court concludes that Navient is entitled to judgment as a matter of law because no reasonable jury could find that Navient's violation of § 1681s-2(b)(1)(A) was willful. *See* Fed. R. Civ. P. 50(a) (question is whether "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue").

Humphrey, who was pro se at trial but is now represented by counsel, doesn't contend that Navient knowingly violated his rights under the FCRA. But he says that a reasonable jury could infer recklessness for two reasons: (1) Navient violated the plain language of 34 C.F.R. § 682.402(c)(7)(i) when it continued reporting his loans as past due while a disability discharge application was pending; and (2) when Navient investigated the notices it received from the credit reporting agencies, it failed to consider documents that Humphrey submitted to Navient directly.

In support of his first reason, Humphrey cites the decision of the court of appeals, which rejected Navient's (and this court's) conclusion that § 682.402(c)(7)(i) allowed Navient to report Humphrey's loans as past due until he submitted a valid disability application. Instead, the court of appeals held that § 682.402(c)(7)(i) was triggered as soon as Navient received a certification from Navient's physician that he was disabled. Humphrey repeatedly cites the

5

statement from the court of appeals that it would be "plainly erroneous or inconsistent" with § 682.402(c)(7)(i) to construe that regulation as Navient proposed. Dkt. 165-1, at 8.

If Humphrey were raising a claim under § 682.402(c)(7)(i) that Navient falsely reported his loans as past due, the decision of the court of appeals would provide a strong basis for contending that Navient violated the regulation willfully. But that is not Humphrey's claim.[3] Rather, Humphrey's sole claim is that Navient violated § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation. As a prerequisite to that claim, Humphrey was required to show that his credit report included an error that required investigating. *See Chiang v. Verizon New England Inc.,* 595 F.3d 26, 37–38 (1st Cir. 2010). But proving a violation of § 682.402 is not the same thing as proving a violation under the FCRA. In fact, § 682.402 is not part of the FCRA; it was promulgated under the Higher Education Act. *See* 20 U.S.C. § 1087; *Kalfountzos v. Duncan*, No. 12-cv-529-mce-efb, 2012 WL 2450713, at *4 (E.D. Cal. June 26, 2012). So even if Navient's violation of § 682.402(c)(7)(i) was willful, that doesn't mean that Navient's violation of § 1681s-2(b)(1)(A) was willful. And Humphrey fails to explain how Navient's violation of § 682.402 shows that it should have been obvious to Navient that its investigations weren't adequate.

Humphrey's second reason in support of a finding of willfulness relates to the scope of Navient's investigations when it received notices from credit reporting agencies that Humphrey was disputing information on his credit report. Navient's investigations were limited to a small number of documents such as Humphrey's promissory notes and loan documentation.

---

[3] Humphrey could not have raised a claim that Navient provided inaccurate information because those claims aren't permitted under the FCRA. *See* 15 U.S.C. § 1681s-2(c)(1); *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011).

Humphrey says that Navient acted recklessly by failing to consider his "letters, documentation about his phone calls, or his rejected [disability] applications" as part of their investigations. Dkt. 213, at 22. If Navient had considered that information, Humphrey says, Navient could have discovered its error in listing his loans as past due in 2012 and 2013.[4] Navient says that it didn't consider those other documents because they weren't implicated by the information Navient received from the credit reporting agencies.

Humphrey's correspondence to Navient, like his notices to the credit reporting agencies, included a thicket of allegations that did not make clear that he was complaining about reporting his loans as past due because his disability application was pending. Nevertheless, the court will assume that the documents that Humphrey cites would have provided Navient with information that would have been helpful in correcting the error in his report. The

---

[4] Humphrey doesn't explain how his phone calls would have provided notice to Navient. But he points to one letter (of many) he sent directly to Navient in which he wrote the following:

> There were no late payments. First, there cannot be late payments on a debt arising from fraud in the factum. Second, the entire history of the loans from 2011 onward have consisted of the loans being in dispute, and being in either forbearance, deferment, or a circumstance where the items did not require payment due to their status in a government evaluation process such as: Total Permanent Disability Discharge, False Certification Discharge, or alternative dispute resolution via the Department of Education Ombudsman Group. Third, your company obstructed the TPD discharge by sending me expired forms for the TPD discharge, and the final result after alternative dispute resolution was that the items were discharged for the reasons I initially applied for. Finally, these items appear with advanced delinquencies with no historical link to justify a reporting of that period of nonpayment.

Trial Ex. 7, at 1. Humphrey says this letter would have made it clear to Navient that he was disputing the way it was reporting his account during the months that his disability discharge application was pending.

question is whether it should have been obvious to Navient that it was violating § 1681s-2(b)(1)(A) by failing to conduct an investigation that included a review of those documents. In arguing that it should have been obvious, Humphrey again relies on the decision of the court of appeals. But the court didn't address the issue of willfulness. Rather, the court held only that "Navient has failed to demonstrate that its investigation of Humphrey's dispute was unquestionably reasonable as a matter of law." Dkt. 165-1, at 9. That is a far cry from a finding that Navient willfully violated § 1681s-2(b)(1)(A). A review of the statute itself and case law applying the statute shows that Navient wasn't on sufficient notice to support a finding of willfulness in this case.

Section 1681s-2(b)(1)(A) states: "After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . conduct an investigation with respect to the disputed information." The statute itself provides no guidance on the scope of an investigation that a furnisher must conduct. *See Van Straaten*, 678 F.3d at 489 (rejecting claim for willfulness, in part because of "[t]he absence of a statutory or regulatory definition of the phrase" in dispute). Even the requirement to conduct a "reasonable" investigation is a judicial gloss that is not in the statutory text. *See Scheel-Baggs v. Bank of Am.*, 575 F. Supp. 2d 1031, 1039 (W.D. Wis. 2008).

The only textual hint about what qualifies as reasonable is the requirement to conduct an investigation "with respect to the disputed information." That phrase supports Navient's view that it isn't required to investigate a dispute unless it receives notice of the dispute from the credit agency. That view is also supported by 15 U.S.C. § 1681s-2(a)(8) and (c)(1), which

allow a consumer to file a dispute with a furnisher directly, but do not create a private right of action if the furnisher fails to take action on a dispute filed by a consumer.

In this case, Humphrey doesn't allege that the information Navient received from the agencies indicated that Humphrey was disputing his credit report based on his disability application. Rather, the notices identified many other disputes, including that Navient "set up these loans without power of attorney using my info" and that "[t]hey have no proof I signed for these loans." Trial Ex. 511, at 788. Those issues have nothing to do with this case. Some of the notices stated that Humphrey's loans had been "discharged" as a result of total and permanent disability. *Id.* But that doesn't help Humphrey either. It is undisputed that Navient correctly identified Humphrey's loans as discharged as soon his disability application was approved. Notice that Humphrey received a discharge isn't the same as notice that Navient failed to properly recognize Humphrey's disability application. The bottom line is that Humphrey doesn't explain how it would have been obvious to Navient from the information it received from the agencies that it needed to investigate any errors related to his disability application. And Humphrey doesn't contend that Navient's investigation was inadequate as to the disputes that were identified by the agencies.

Case law doesn't help Humphrey either. Humphrey doesn't cite a single case, from this circuit or any other, that would have given Navient notice that § 1681s-2(b)(1)(A) requires a furnisher to investigate disputes beyond those identified by the credit reporting agency or that the furnisher must always review documents filed directly by the consumer. *See Shlahtichman v. 1 800 Contacts, Inc.*, 615 F.3d 794, 803–04 (7th Cir. 2010) (furnisher's conduct not willful when "there has been no contrary opinion from a court of appeals or federal agency suggesting that the company's understanding of the statute is wrong"). And the court has not uncovered

9

any such cases in its own research. Again, if anything, the case law supports a contrary conclusion. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (investigation "was reasonable given the scant information [the furnisher] received regarding the nature of [the plaintiff's] dispute," but "perhaps a more thorough investigation would have been warranted" if the credit reporting agency had provided more details).[5]

This is not to say that a furnisher is never required to look beyond the information provided by the credit reporting agency. One might contend that a reasonable investigation should always include a deeper dive into records submitted directly by the consumer. And, as the court of appeals noted in this case, a reasonable jury could find that Navient should have done more. The important point is simply that, before this case, the law wasn't clearly established that the scope of Navient's investigations was inadequate. Even the court of appeals didn't cite any other cases in which courts had found that conduct similar to Navient's could violate § 1681s-2(b)(1)(A).

*Salem v. Legal Liaison Service* is instructive. No. 16-cv-3927, 2019 WL 1057371 (N.D. Ill. Mar. 6, 2019). In that case, the court denied summary judgment on a claim under § 1681i, which is similar to § 1681s-2, except that it requires credit reporting agencies rather than furnishers to conduct reasonable investigations when a consumer complains about inaccurate information on a credit report. The court held that there was a genuine issue of material fact on the reasonableness of the agency's investigation because the consumer had provided the

---

[5] *See also Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 592 (7th Cir. 2019) (furnisher's investigation was reasonable when it confirmed accuracy of disputed information identified by credit reporting agency); *Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018) (investigation was reasonable when furnisher "verif[ied] [the consumer's] personal information with her . . . file on record" after receiving "scant report" from credit reporting agency that the consumer "claimed the account did not belong to her").

10

agency with sufficient notice that it was using "an unreliable source of information." *Id.* at *6. But the court granted summary judgment on the issue of willfulness, reasoning that the agency "was not acting contrary to any directly controlling authority, and its position was not objectively unreasonable given the whole body of applicable case law." *Id.* at *7.

The same conclusion applies here. A reasonable jury could find that Navient acted unreasonably, but, for the reasons discussed above, there is no basis for finding that Navient willfully violated Humphrey's rights under the FCRA. The court will grant Navient's motion for judgment as a matter of law on the issue of willfulness.

ORDER

IT IS ORDERED that:

1. Defendant Navient Solutions, Inc.'s motion for judgment as a matter of law on the issue of willfulness, Dkt. 195, is GRANTED.

2. Navient's motion for a new trial, Dkt. 210, is DENIED as moot as to punitive damages and DENIED as unripe as to compensatory damages.

3. The clerk of court is directed to enter judgment in favor of plaintiff Ian Humphrey on the jury's verdict for $180,000 in compensatory damages.

Entered January 8, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge