IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IAN HUMPHREY,

                 Plaintiff,                             OPINION and ORDER

    v.

NAVIENT SOLUTIONS, INC.,                            16-cv-370-jdp

                 Defendant.

---

      Plaintiff Ian Humphrey sued defendant Navient Solutions, Inc. under the Fair Credit Reporting Act for failing to conduct a reasonable investigation of disputed information on his credit report, namely, that his student loans were past due. A jury found in Humphrey's favor, awarding him $180,000 in compensatory damages and $120,000 in punitive damages. The court granted Navient's motion under Federal Rule of Civil Procedure 50 to set aside the award of punitive damages because Humphrey did not meet the relevant legal standard. Dkt. 215. Judgment was then entered on the award for compensatory damages. Dkt. 216.

      Three motions are now before the court: (1) Navient's motion for a new trial, or, in the alternative, for a remittitur, on the ground that the compensatory damages award was excessive, Dkt. 219; (2) Humphrey's motion for attorney fees, Dkt. 218; and (3) Humphrey's bill of costs, Dkt. 217. For the reasons explained below, the court will deny Navient's motion and award $55,410 in fees and $1,074.32 in costs to Humphrey.

BACKGROUND

The relevant facts are set forth in the order granting Navient's Rule 50 motion on punitive damages and in the court of appeals's decision, so the court provides only a brief overview here.

Navient serviced Humphrey's student loans from 2010 to 2014, when Humphrey received a discharge for being disabled. Humphrey's claim is that Navient violated the Fair Credit Reporting Act, § 1681s-2(b)(1)(A), by failing to reasonably investigate notices it received in 2014 and 2015 from credit reporting agencies that Humphrey was disputing the accuracy of his credit reports. The court of appeals concluded that the credit reports were inaccurate because Navient was reporting some accounts as "past due" in 2012 and 2013, even though Humphrey's disability application was pending then, and a pending application required suspension of collection activity. The court of appeals also concluded that reasonable jury could find that Navient could have corrected the error if it had conducted a reasonable investigation of the disputes. After a trial, the jury found in Humphrey's favor.

ANALYSIS

A. Motion for remittitur or a new trial

Navient doesn't challenge the jury's finding that Navient violated Humphrey's rights under the FCRA. But Navient says that the $180,000 award of compensatory damages was excessive, so it is entitled to a new trial unless Humphrey accepts a remittitur of $25,714.20, which is one seventh of the award. When considering an objection to a damages award, the court considers two factors: whether the jury's verdict is rationally related to the evidence and

whether the award is roughly comparable to awards made in similar cases. *Green v. Howser*, 942 F.3d 772, 780–81 (7th Cir. 2019).

### 1. Evidence of Humphrey's damages

Humphrey says that the jury's compensatory damages award is justified by two types of harm: (1) pain and suffering from being unable to treat a painful wisdom tooth; and (2) emotional distress from Navient's failure to properly investigate or correct the errors on his credit report.

#### a. Wisdom tooth

Humphrey says that the errors on his credit report prevented him from obtaining credit to pay for surgery on his wisdom tooth. As a result, Humphrey endured pain for months. Eventually, the tooth started "driving [Humphrey] crazy." Dkt. 206, Trial Trans., at 26:12–13. The pain became so severe that Humphrey "developed bizarre behaviors like smacking myself—pounding on my own head because it just felt like if I put pressure on myself somehow, that it would distract me from the pain." *Id.* at 26:14–17. When Humphrey read on the internet that he could die from a tooth infection, he became distressed and "didn't want to live anymore." *Id.* at 26:23–27:1.

Navient doesn't contend that Humphrey's pain and suffering from his wisdom tooth couldn't support a compensatory damages award of $180,000. Navient also doesn't contend that Humphrey's pain and suffering wasn't reasonably foreseeable. So those issues are waived. Instead, Navient says that the evidence doesn't support a finding that its conduct caused the harm for three reasons: (1) Humphrey didn't actually submit a credit application for his wisdom tooth; (2) Humphrey's ex-girlfriend, Amanda Craven, testified that Humphrey didn't get treatment because he couldn't get a "referral"; and (3) there were other reasons that

3

Humphrey could have been denied credit, such as low income.[1] The court isn't persuaded by any of these reasons.

As for the first reason, it is true that Humphrey testified that he didn't submit a credit application. But Humphrey also testified that he decided not to because of a conversation with the potential creditor, who told him "it's not even worth it" because Humphrey had so many delinquencies from student loan debt. *Id*. at 24:1–20.[2] Navient doesn't contend that Humphrey's conduct was unreasonable, and it doesn't cite any authority for the view that the causal chain is broken as a matter of law under the circumstances of this case. It is the defendant's burden to show that the jury's damages award is excessive, *see E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1581 (7th Cir. 1997), so the court won't set aside the award on this ground.

As for Craven's testimony, she seemed uncertain. She said that Humphrey wasn't able to get a referral, but she also said that there were "a whole bunch of complications with the insurance," without explaining what she meant. Dkt. 206, Trial Trans., 87:1–4. In any event, Humphrey was in a better position than Craven to explain what happened, and the jury was entitled to credit his testimony over Craven's.

As for other potential barriers to Humphrey getting credit, he wasn't required to prove that his delinquencies with Navient were the only reason he wasn't able to get credit. Navient doesn't object to the jury instructions, which stated that Navient's conduct had to be a

---

[1] Navient lists more reasons in its reply brief, but those arguments are forfeited because Navient didn't raise them in its opening brief. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005).

[2] Navient doesn't object Humphrey's testimony on the ground that it is hearsay, so that issue is forfeited.

"substantial factor" in causing the harm. Dkt. 199, at 5. Humphrey's evidence is sufficient to satisfy that standard.

### b. Emotional distress

Humphrey points to several types of emotional distress that he suffered because of Navient's conduct. Some of these issues seem to be more related to the *litigation* rather than to Navient's failure to investigate and correct the mistakes on his credit report. For example, Humphrey says that he was forced to move out of his mother's house and that he broke up with Craven. But the only evidence he cites in support of those problems is Craven's testimony. As for the tension with Humphrey's mother, Craven said that Humphrey's mother "couldn't handle him anymore" because they "would fight about this lawsuit." Dkt. 206, Trial Trans., at 91:6–10. And Craven also said that she and Humphrey broke up because of the lawsuit. *Id.* at 88:8–23. Humphrey doesn't dispute Navient's contention that emotional distress from a lawsuit isn't compensable. *See Stoleson v. United States,* 708 F.2d 1217, 1223 (7th Cir. 1983) ("An alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages."). Humphrey also says in his brief that he was homeless at the time of trial, but he acknowledges that he didn't actually testify as such, and, even now, he doesn't cite any evidence connecting his housing status with Navient's conduct.

But there was also testimony that Humphrey suffered significant emotional distress because of Navient's failure to correct the errors on his credit reports. For example, Humphrey said that he thought "the battle was won" when he received a discharge on his loans, but then he discovered that Navient was still reporting his loans as past due and affecting his credit. Dkt. 206, Trial Trans., at 84:19–20. At that point, he became "isolated" and "didn't want to be around anyone." *Id.* at 84:23–24 and 90:4. He would "space out and just sit there for hours."

*Id.* at 85:10. He wouldn't eat and he "would be up late at night just thinking about . . . the steps he needed to take" to fix the problem. *Id.* at 86:1–4. He and Craven "kind of drifted apart." It got so bad that Humphrey "didn't want to live." *Id.* at 84:23.

Most of the above comes from Craven's testimony. Navient says that Craven couldn't have been talking about the effect of its conduct on Humphrey because she said she was referring to 2012, but the relevant conduct in this case didn't occur until after that. But the jury could have inferred that Craven was mistaken about the date. Craven's testimony was in response to questions about Humphrey's condition after his student loans were discharged, which occurred in 2014.

Navient raises two other objections to the testimony, but neither is persuasive. First, Navient says that the testimony is too conclusory, citing *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004), and *Wantz v. Experian Info. Sols.*, 386 F.3d 829 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). But there is no special rule for crediting testimony about emotional distress. *See Pickett v. Sheridan Health Care Center*, 610 F.3d 434, 446 (7th Cir. 2010). The question is the same as for any other evidence, which is whether a rational jury could credit it. *Sarver* and *Wantz* state only that a plaintiff "must explain the circumstances of his injury in reasonable detail." The testimony cited above meets that standard.

Second, Navient says that Humphrey suffered from other psychological issues, such as bipolar depression, and that he failed to prove that any emotional distress he experienced was the result of Navient's conduct rather than his preexisting conditions. But the general rule is that "the tortfeasor takes his victim as he finds him," *Nelson v. City of Chicago*, 810 F.3d 1061, 1068 n.2 (7th Cir. 2016) (internal quotation marks and alterations omitted), which means

6

that a defendant may be held liable for exacerbating a preexisting condition. And Navient didn't ask for an instruction on pre-existing conditions, so Navient forfeited that issue. In any event, the jury was entitled to credit Humphrey and Craven's testimony that the emotional distress they described was the result of Navient's failure to correct Humphrey's credit report. Navient cites no authority for the view that Humphrey needed expert testimony to rule out the possibility that he and Craven were wrong about the source of his distress.

### 2. Awards in similar cases

When considering awards in other cases, the court's responsibility "is not to fit th[e] case into a perfect continuum of past harms and past awards. . . . [It is] to determine if the award in this case was roughly comparable to similar cases, such that the instant award was not so beyond the pale as to constitute an abuse of discretion." *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 567 (7th Cir. 2006). The court finds that Humphrey's situation is roughly comparable to that in *Deloughery v. City of Chicago*, 422 F.3d 611, 615 (7th Cir. 2005), in which the court upheld a $175,000 award for emotional distress when the plaintiff did not seek professional help after she did not receive a promotion but testified to her devastation at not being promoted, described obstacles she had overcome in her life, and explained the impact of the employment decision on herself and her family. That was 15 years ago, so the jury's award of $180,000 in this case was within the bounds of its discretion.

### 3. Conclusion

The court acknowledges that $180,000 is a significant award for compensatory damages. But the question isn't whether the court would have awarded the same amount of money if it were acting as the factfinder. The question is whether the jury's verdict is rationally related to the evidence. And in a case like this one involving "simple issues but highly disputed

7

facts," a jury's verdict is entitled to "particular deference." *Willis v. Lepine*, 687 F.3d 826, 836–37 (7th Cir. 2012). Navient has failed to show that the court should override the jury's finding, so Navient's motion for a remittitur or a new trial will be denied.

## B. Attorney fees

Humphrey seeks $72,100 in attorney fees for 207.5 hours of work for his counsel, Sam Wayne.[3] The parties do not dispute that the counsel of a prevailing plaintiff is entitled reasonable fees under the FCRA. *See* 15 U.S.C. § 1681*o*(a)(2). The court uses a lodestar method to determine a reasonable fee, multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). Navient challenges both the rate and the amount of time claimed by Wayne.[4]

### 1. Reasonable rate

Wayne requests a rate of $350 an hour. Initially, Wayne supported that rate by pointing to his 11 years of experience practicing law (he graduated from law school in 2009) and to the Consumer Law Attorney Fee Survey Report (2017–18), which states that the median rate for a Madison consumer lawyer with 11 to 15 years of experience is $350 an hour. Wayne did not comply with or acknowledge the court's procedure for requesting attorney fees, which requires the following:

---

[3] Wayne represented Humphrey through the initial entry of judgment in favor of Navient and then again after the jury found in Humphrey's favor. Wayne did not represent Humphrey on appeal or at trial. He initially requested $66,605 for 190.3 hours, but he supplemented that request with additional time spent on his reply materials.

[4] The court may adjust the lodestar amount downward based on the party's degree of success. *See Richardson v. City of Chicago, Ill.*, 740 F.3d 1099 (7th Cir. 2014). Although the court of appeals affirmed the dismissal of some of Humphrey's claims and this court granted Navient's Rule 50 motion to remove the award for punitive damages, Navient doesn't ask the court to make an adjustment to the lodestar on these grounds, so the court doesn't consider that issue.

> 5. Affidavits or other statements confirming that the hourly rate(s) are in line with the market rate for the type of work performed and the amount of experience of the attorney who performed it. (Note: an affidavit indicating the billing attorney's "usual" rate is typically insufficient to establish the market rate.)
>
> 6. Other evidence that the total fee charged is reasonable, such as a statement that the fee was billed to the client and that the client paid the fee, or instances where courts awarded similar fees for a similar type and amount of work.

Dkt. 31, at 41. The court's procedures reflect the view that "the most persuasive evidence of reasonableness is the hourly rate that clients actually pay, both to the counsel in that case and to other lawyers in the relevant market." *Broome v. Kohn Law Firm, S.C.*, No. 18-cv-860-jdp, 2019 WL 1595864, at *2 (W.D. Wis. Apr. 15, 2019).

After Navient objected to counsel's request, Humphrey supplemented his petition with the declaration of Jeff Scott Olsen, a local civil rights lawyer who has been practicing since 1994. Dkt. 228, ¶¶ 2, 4.[5] Olsen states that Wayne's requested hourly rate "is well within the range of rates charged by attorneys of similar skill, reputation and experience in this market." *Id.*, ¶ 21. And after Navient filed its sur-reply brief, Wayne filed a one-page declaration stating that he is charging $350 an hour to his client (the defendant) in that case, which also appears to be a consumer law case. Dkt. 234.

The usefulness of Olsen's declaration is limited because he doesn't provide any basis for finding that hourly rates in civil rights cases are comparable to consumer law cases. And he doesn't otherwise explain why he is in a position to determine what a reasonable rate in a consumer law case is. *See Montanez v. Simon,* 755 F.3d 547, 554 (7th Cir. 2014) ("[C]onclusory

---

[5] Because Humphrey submitted the declaration with his reply brief, the court gave Navient leave to file a sur-reply brief. Dkt. 232.

affidavits from attorneys merely opining on the reasonableness of another attorney's fee—unlike affidavits describing what comparable attorneys charge for similar services—have little probative value." (internal quotation marks and alterations omitted)); *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999) (evidence of reasonableness includes "rates similarly experienced attorneys in the community charge paying clients for *similar work* and evidence of fee awards the attorney has received in *similar cases*" (emphasis added)).

Wayne's one-page declaration was filed too late, so the court can't consider that either. As for the Consumer Law Attorney Fee Survey Report, other district courts in this circuit have questioned the reliability and methodology of the report. *See Watkins v. Trans Union, LLC*, No. 214CV00135WTLMJD, 2019 WL 336674, at *4 (S.D. Ind. Jan. 28, 2019) (collecting cases). Wayne doesn't even try to show that the report is reliable or accurate.

In the absence of helpful evidence from Wayne, the court will look to other cases. Those suggest that Wayne's hourly rate is inflated. *See Spuhler v. State Collection Servs., Inc.*, No. 16-CV-1149, 2019 WL 2183803, at *3 (E.D. Wis. May 21, 2019) (approving rate of $300/hour for consumer lawyer with 13 years of experience); *Broome v. Kohn Law Firm, S.C.*, No. 18-CV-860-JDP, 2019 WL 1595864, at *1–2 (W.D. Wis. Apr. 15, 2019) (approving rate of $355/hour for consumer lawyer with *17* years of experience); *Watkins v. Trans Union, LLC*, No. 214CV00135WTLMJD, 201279 WL 336674, at *4 (S.D. Ind. Jan. 28, 2019) (approving rate of $250/hour for consumer lawyer with sixteen years of experience); H*eling v. Creditors Collection Serv. Inc.*, No. 15-CV-1274-JPS, 2017 WL 2539785, at *3 (E.D. Wis. June 12, 2017) (approving rate of $300/hour for consumer lawyer with 14 years of experience).

Wayne points to nothing about his skills or the results he produced in this case that would warrant a higher rate. After all, Humphrey obtained the favorable ruling from the court

10

of appeals and the jury verdict while he was acting pro se. So the court will reduce Wayne's hourly rate to $300 an hour. Navient asks the court to reduce Wayne's rate to $225 an hour, but it doesn't provide any basis for that figure, so the court will approve a rate in line with that of other courts.

### 2. Reasonable hours

Navient challenges the reasonableness of much of the time Wayne spent on the case. First, Navient says that the court should subtract 13 hours for communications with other lawyers because it is impossible to tell from Wayne's records what the purpose of those communications was or what the communications were about. Navient cites *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008), which states that "attorneys seeking reimbursement for internal meetings should identify explicitly the subject matter of their discussions so that we may assess whether the amount of time recorded was 'reasonably expended.'" Also on point is *Montanez*, 755 F.3d at 555–56, which affirmed a decision to deduct hours "for vaguely described phone calls." In his reply brief, Wayne says that communications with other lawyers aren't categorically barred, but that's not the issue. Wayne doesn't explain what the communications were about or why they were reasonably necessary, so the court will deduct the 13.1 hours related to those communications.

Second, Navient challenges billing entries for discovery requests against defendants who were dismissed early on in the case, totaling eight hours. Wayne doesn't contend that he is entitled to fees related to dismissed defendants. Instead, he says that "certain" documents obtained in that discovery were used at trial, Dkt. 218-1, at 5 n.2, but he doesn't identify what those documents were or otherwise provide any basis for finding that the discovery was

reasonably necessary to Humphrey's claims against Navient. The court will deduct those hours as well.

Third, Navient says that Humphrey spent an excessive amount of time on various filings, including the drafting of the complaint (ten hours) and responding to Navient's post-verdict motions (42.2 hours). But the time Wayne spent on those documents isn't obviously unreasonable and Navient doesn't support its view that the time is excessive, so the court declines to impose the requested deduction. *See Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n and Chicago Journeymen Plumbers' Local Union 130, U.A.*, 562 F.3d 784, 793 (7th Cir. 2009) (declining to reduce fees based on "vague assertions of excessiveness").

Fourth, Navient contends that the court should deduct fees related to unsuccessful motions. But "a plaintiff is not to be denied full attorneys' fees merely because he lost some interim rulings en route to ultimate success." *Alliance to End Repression v. City of Chicago*, 356 F.3d 767, 770 (7th Cir. 2004). So the court won't deduct those fees.

Fifth, Navient asks the court to deduct time spent on preparing discovery requests fewer than 30 days before the close of discovery and preparing for a deposition that Wayne never took. But Wayne points out that he prepared the requests while he was seeking an extension of the deadline, and that the deposition was cancelled only because the court granted summary judgment to Navient. Navient doesn't dispute either of these representations, so the court finds that the time is compensable.

Sixth, Navient asks the court to deduct time spent on correcting filings that had errors in them. But Navient cites no authority for the view that such time isn't compensable, so the court will allow those fees.

Seventh, and finally, Navient says that Wayne improperly billed for clerical tasks. *See Montanez,* 755 F.3d at 555–56 (affirming denial of time for clerical work). Navient asks the court to deduct 17.1 hours for those tasks, but Navient fails to acknowledge that the cited billing entries are for preparing *and* filing certain documents. Wayne represents that no more than ten percent of the billed time was for clerical tasks. That is a reasonable assumption, so the court will deduct 1.7 hours claimed for clerical work.

### 3. Conclusion

The court approves: (1) 184.8 hours of work (207.6 – 13.1 – 8 – 1.7 hours); and (2) an hourly rate of $300 an hour, for a total of $55,440 in fees.

## C. Costs

Wayne seeks $1,074.32 in costs: $ 1,009.32 for trial transcripts and $65 for making copies. Dkt. 217. These costs are compensable under 28 U.S.C. § 1920(2) and (4), and the claimed amount is modest, so the court will grant Wayne's request.

## ORDER

IT IS ORDERED that:

1. Defendant Navient Solutions, Inc.'s motion for a new trial or remittitur, Dkt. 219 is DENIED.

2. Plaintiff Ian Humphrey's motions for attorney fees and costs, Dkt.217 and Dkt. 218, are GRANTED in part. Navient must pay $55,440 in fees and $1,074.32 in costs.

Entered July 20, 2020.

                              BY THE COURT:

                              /s/

                              _____

                              JAMES D. PETERSON
                              District Judge